1  **David B. Cotner, Esq.**
   **Kyle C. Ryan**
2  DATSOPOULOS, MacDONALD & LIND, P.C.
3  201 West Main, Suite 201
   Missoula, Montana 59802
4  Telephone: (406) 728-0810
5  Email: dcotner@dmllaw.com

6  *Attorneys for Plaintiffs*
7

8

9

10              MONTANA ELEVENTH JUDICIAL DISTRICT COURT,
11                          FLATHEAD COUNTY

12  DON and EMILY MASCHMEDT, as          Dept. No. *DV-15-1174C*
13  individuals,                         Cause No.  HEIDI J ULBRICHT

14              Plaintiffs,
                                         **COMPLAINT AND**
15        v.                             **DEMAND FOR JURY TRIAL**
16

17  GFY87, LLC, a Montana limited
18  liability company, MARK D.
    KVAMME, an individual, PAUL
19  JOHANNSEN, an individual, JOHN
20  DOES 1-10, and CORPORATIONS A,
    B, and C,
21

22              Defendants.

23

24        COMES NOW the Plaintiffs, Don and Emily Maschmedt (collectively

25  "Maschmedts"), by and through their counsel of record, David B. Cotner and Kyle C.
26
27  Ryan of Datsopoulos, MacDonald & Lind, P.C. and as their claim for relief state and

28  allege as follows:

EXHIBIT
A

COPY

COMPLAINT AND DEMAND FOR JURY TRIAL                              Page 1

## PARTIES

1.     Maschmedts are individuals residing in Auburn, Washington.

2.     Defendant, GFY87, LLC ("GFY87") is a Montana limited liability company with a principal place of business located in Montana and owns real property located in Flathead County, Montana.  GFY87 is the successor in interest to the Homestead at Whitefish, LLC, a Montana limited liability company and the current owner of real property located within a development that was previously The Homestead at Whitefish.

3.     Defendant, Mark D. Kvamme ("Kvamme"), is an individual, who upon information and belief, resides in Columbus, Ohio. Kvamme is a member of GFY87, LLC ("GFY87"), which owns real property in Flathead County, Montana.   Kvamme was a member of The Homestead at Whitefish, LLC, which acted as the developer of the Homestead at Whitefish development.

4.     Defendant, Paul Johannsen ("Johannsen"), is an individual, who upon information and belief, resides in Whitefish, Flathead County, Montana.   Johannsen was a member of The Homestead at Whitefish, LLC, which acted as the developer of The Homestead at Whitefish development.

5.     John Does 1-10 and Corporations A, B, and C are individuals and entities with identities that are currently unknown which bear some or all of the liability associated with Maschmedts' claims.  It is Maschmedts' belief that these unknown Defendants participated or assisted in the performance of the wrongful acts and omissions described

within this Complaint, although the full extent of their involvement is unknown at this time. Alternatively, these Defendants acted as principals or agents, actual or ostensible of other named Defendants in performing the wrongful acts or omissions described below, although the full extent of their involvement in currently unknown. When the names and capacities of these Defendants have been ascertained, appropriate amendments will be filed.

## JURISDICTION AND VENUE

6.     The facts and circumstances giving rise to Maschmedts' Complaint arise out of contracts for the purchase and sale of real property located in Flathead County, Montana and which further involves fraudulent and/or tortious conduct that transpired within Flathead County, Montana.

7.     Venue is proper in the Montana Eleventh Judicial District Court, Flathead County because the principal office address of Defendant GFY87 is within Flathead County, Defendant Johannsen is a resident of Flathead County, Montana, and the property that is the subject to this action is also located within Flathead County, Montana. Additionally, all events giving rise to Maschmedts' causes of action occurred within Flathead County, Montana.

## FACTS COMMON TO ALL COUNTS

8.     In 2007, Maschmedts began looking for a vacation home in northwestern Montana to enjoy with their family. Maschmedts were drawn to northwestern Montana

by the close proximity to the lakes and mountains that offered various outdoor recreation opportunities that they could enjoy with their family and friends.

9.      Upon looking for property in northwestern Montana, Maschmedts became aware of The Homestead at Whitefish (hereinafter the "Homestead"), which was a new development near Whitefish, Montana.

10.     The Homestead was a 1,400 acre, gated community set within the Salish Mountains and just minutes from the heart of downtown Whitefish, Whitefish Lake, and Whitefish Mountain Resort.  The Homestead was subdivided into a limited number of large, ~20 acre, residential lots to preserve privacy for its residents, maintain wildlife corridors, and protect the natural beauty of the land.

11.     In the summer of 2007, Maschmedts were given a tour of The Homestead by Defendant Johannsen and shown several residential lots where they could build their vacation home.

12.     Maschmedts were presented with various sales brochures and marketing documents (hereinafter "Promotional Materials") that provided an overview of the residential community and the amenities that came with the purchase of property within the Homestead.

13.     Defendant Johannsen represented to Maschmedts, as prospective purchasers in the Homestead, that the purchase of a lot would entitle Maschmedts to use certain amenities that already existed on The Homestead, as well as the amenities that were

planned for the future (hereinafter "Amenities") during Maschmedts' ownership.

14.    Defendants agreed to provide to Maschmedts, and other property owners within The Homestead, the following Amenities:

- ➤ A Concierge service, which would coordinate and arrange recreational activities, book restaurant reservations, and even arrange the delivery of groceries;

- ➤ Use of the "Homestead Lodge", which when built, would serve as the social center for The Homestead community.  The Homestead Lodge would include an outdoor dining patio, large residential style kitchen, lounge and bar areas, a fitness center and a recreational room for games and reading;

- ➤ Use of the "Lewis and Clark Cabins", which were two well-appointed homeowner cabins that could be used by property owners and their guests;

- ➤ Use of the "Hitching Post", which was located at the entrance of The Homestead and created to function as a concierge and business center for property owners and their guests;

- ➤ Use of the "Homestead Barn/Livery Stable", which provided boarding to allow property owners to keep horses on The Homestead to explore the adjacent Flathead National Forest;

- ➤ Use of "Little Bootjack Lodge", which was located near Little Bootjack Lake adjacent to The Homestead and could be utilized by property owners and their families for swimming, fly-fishing, canoeing, and kayaking;

➢ Use of five snowmobiles and two ATV's by property owners and their guests;

➢ Use of The Homestead's open space, which included miles of trails, access to the

Flathead National Forest, and access to Chinook Lake.

Use of such amenities is confirmed by the online marketing materials of the Homestead, attached as Exhibit "A".

15.     At every stage of the Maschmedts' review and eventual purchase of their respective properties, the sale of the properties was premised upon their representations, and the existence and right to utilize the Amenities for as long as Maschmedts owned property within The Homestead.  Such rights added value to Maschmedts' property and could be conveyed to any successors in interest.

16.     The Amenities were a material component of that which the Maschmedts agreed to purchase, and the Amenities, including use of the common areas increased the value of the purchased property by a substantial amount.  The Amenities, including access to the common areas, were a material factor in Maschmedts' decision to purchase their property in The Homestead.

17.     The Amenities were the subject of extensive marketing and promotional materials.  The Amenities were also referenced in a document provided to the Maschmedts at or near the time of their purchase titled "Highlights of the Protective Covenants of The Homestead at Whitefish."  The document indicated that Associations funds are used for general maintenance and upkeep of the community's common

elements and Amenities.

18.     The Maschmedts relied upon the Promotional Materials, which promoted the aforementioned Amenities and common areas when entering into the Buy-Sell Agreement for the purchase of their property.

19.     On August 27, 2007, Maschmedts entered into a Buy-Sell Agreement, which is attached as Exhibit "B", with The Homestead at Whitefish, LLC, the predecessor in interest to Defendant GFY87, for the purchase of real property more particularly described as follows:

> Lot 1, Plat of The Homestead at Whitefish, Phase 1, records of Flathead County, Montana (hereinafter the "Property").

20.     Under the terms of the Buy-Sell Agreement, Maschmedts agreed to purchase the Property, along with all rights associated with ownership, for Four Hundred Ninety-Five Thousand Dollars ($495,000).

21.     Maschmedts and The Homestead at Whitefish, LLC closed on the sale of the Property on October 17, 2007.

22.     From 2007 to 2014, Maschmedts enjoyed the use of the Amenities and common areas associated with their ownership of property within The Homestead as anticipated.

23.     On March 31, 2014, The Homestead at Whitefish, LLC filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Montana.

24.     On or about March 31, 2014, Maschmedts were first denied access to any of the

Amenities for which they were entitled to use.  Maschmedts have been denied access

and use the Amenities since, despite still owning the Property within The Homestead.

25.     On November 7, 2015, the United States Bankruptcy Court for the District of

Montana approved the Second Amended Plan of Reorganization Pursuant to Chapter 11

of the Bankruptcy Code, dated as October 10, 2014 (Case No. 14-60353-11, dkt. 129)

(hereinafter the "Plan"), which is attached as Exhibit "C".

26.     Pursuant to the terms of the Plan, all property held by The Homestead at

Whitefish, LLC was to be sold to "an entity formed by Mark D. Kvamme and/or K2M,

LLC" with the proceeds of the sale to fund distributions to creditors.

27.     Pursuant to the terms of the Plan, individuals who owned real property within The

Homestead would agree to convey their real property to an entity owned by Kvamme

and/or K2M, LLC at a fraction of the price those same individuals had purchased their

properties for.

28.     In effect, the Plan allowed Kvamme to purchase back the properties that he had

sold to such individuals just several years prior at a fraction of the price that such

individuals had paid.

29.     While the other property owners agreed to the terms of the Plan, Maschmedts

objected to the confirmation of the plan (Case No.: 14-60353-11, dkt. 142).

30.     Maschmedts stipulated and agreed to withdraw their objection to the Plan on the

condition that the Order confirming the Plan contain the following language:

"Without limitation the effect of the relief provided in this Order and the Plan, nothing contained herein is intended to, or shall, limit or expand the property rights of Don and Emily Maschmedt with respect to their Homeowner Property, whether pursuant to the Declaration of Covenants, Conditions, Restrictions and Easements for The Homestead at Whitefish or otherwise."

(Case No.: 14-60353-11, dkt. 161).

31.    The Homestead at Whitefish, LLC's Motion for Final Decree was eventually granted by the Bankruptcy Court on January 6, 2015, with Maschmedts' language included.

32.    Since the Bankruptcy Court's Final Decree, the real property that was formerly part of The Homestead at Whitefish, with the exception of Maschmedts' Property, has been conveyed to Defendant GFY87, an entity formed and controlled by Kvamme.

33.    On June 12, 2015 Maschmedts' attorney sent a letter to GFY87 asking that the parties confirm Maschmedts' ownership rights and use of amenities through the execution and recording of appropriate documents. Additionally, Maschmedts' counsel asked for guidance as to where Maschmedts' were to pay their annual fee. In counsel's letter he indicated that Maschmedts' would document a plan that was workable for the Maschmedts' and such document would be provided within two weeks. Maschmedts' counsel indicated as follows:

"I look forward to receiving the requested information and working with the two of you in designing a plan that will be meaningful for the Maschmedts, and which will provide you some predictability with [sic] respect to their intended use."

34.    On June 15, 2015 Maschmedts' counsel wrote to GFY87 outlining how to allocate Maschmedts' use of the amenities which exist in the subdivision.  A copy of the June 15, 2015 correspondence is attached hereto as Exhibit "D".

35.    In response to the correspondence, GFY87 hired counsel (James A. Patten) who stated in a summary paragraph as follows:

> "In summary, based on their proof of claim the Maschmedts knew, the fact that the cabins and the Lodge at Little Bootjack Lake had not been a part of any common area or put into the ownership of the Association.  That was the status of the cabins and Lodge as of the date of confirmation.  The Maschmedts at that point had no rights to the cabins or the Lodge then and they have no right now as they expressly agreed that confirmation of Chapter 11 Plan did not increase their property rights.

A copy of the correspondence is attached hereto as Exhibit "E".

36.    Defendant GFY87 has continued to deny Maschmedts access to the Amenities in which they are entitled to use.

## COUNT I

## DECLARATORY JUDGMENT

37.    Maschmedts incorporate into Count I by reference the allegations contained in paragraphs 1-36 as if fully set forth herein.

38.    Courts in the state of Montana have the power to declare the rights, status and other legal relations of parties under a deed, written contract or other writings constituting a contract.

39.    Maschmedts request that this Court specifically determine Maschmedts' rights

1  with respect to the amenities.

2  40.   Specifically, Maschmedts request that the Court enter a Declaratory Judgment

3

4  declaring that Maschmedts, and their successors, have rights and perpetuity as follows:

5  ➢ A Concierge service, which would coordinate and arrange recreational activities,

6

7  book restaurant reservations, and even arrange the delivery of groceries;

8  ➢ Use of the "Homestead Lodge", which when built, would serve as the social

9  center for The Homestead community.  The Homestead Lodge would include an

10

11  outdoor dining patio, large residential style kitchen, lounge and bar areas, a

12  fitness center and a recreational room for games and reading;

13

14  ➢ Use of the "Lewis and Clark Cabins", which were two well-appointed

15  homeowner cabins that could be used by property owners and their guests;

16  ➢ Use of the "Hitching Post", which was located at the entrance of The Homestead

17

18  and created to function as a concierge and business center for property owners

19  and their guests;

20

21  ➢ Use of the "Homestead Barn/Livery Stable", which provided boarding to allow

22  property owners to keep horses on The Homestead to explore the adjacent

23

24  Flathead National Forest;

25  ➢ Use of "Little Bootjack Lodge", which was located near Little Bootjack Lake

26  adjacent to The Homestead and could be utilized by property owners and their

27  families for swimming, fly-fishing, canoeing, and kayaking;

28

➢ Use of five snowmobiles and two ATV's by property owners and their guests;

➢ Use of The Homestead's open space, which included miles of trails, access to the Flathead National Forest, and access to Chinook Lake.

41.   In addition to entering a Declaratory Judgment, the Courts of the state have the power to grant further relief as is necessary. Maschmedts request that the Court grant such further relief in this case by ordering the following:

➢ Transferring to the Maschmedts an ownership interest in the real property upon which the cabins are located, to a pro rata share of such asset. Such ownership interest should be equal to 45/365 of such parcels. Such interest shall be held in tenancy in common.

➢ To grant similar relief with regard to the lodge, barn and gatehouse.

➢ To document and reaffirm all easements relating to the roads and trails to provide Maschmedts access to the amenities, as well as to the property to which they were entitled to use.

➢ To transfer to Maschmedts an ownership interest in all personal property which was defined as an amenity, and all replacement property in the future.

➢ To declare that Maschmedts have the right to transfer their divided ownership interests in these assets to any person or entity which is subsequent purchaser of Maschmedts' property.

➢ To instruct to provide guidance to the parties with respect to Maschmedts'

1  obligation to pay no more than the annual fee of $3,000 for the use of the

2  amenities, as well as the ownership of the amenities.

3

4  42.    In addition, this Court should award costs that are equitable and just, including an

5  award of attorney's fees incurred by Maschmedts arising from Defendants' actions and

6  inactions.

7

8                              **COUNT II**

9                          **INJUNCTIVE RELIEF**

10

11  43.    Maschmedts incorporate into Count II by reference the allegations contained in

12  paragraphs 1 through 42 as if fully set forth herein.

13

14  44.    Under Montana law, a Preliminary Injunction may be granted in the following

15  situations:

16       ➢     When it appears that the applicant is entitled to the relief demanded and

17

18             part of the relief consists in restraining the continuance of the act complaint

19             of, either for a limited period or a perpetually.

20       ➢     When it appears that the continuation of some act during the litigation

21

22             would  produce a great or irreparable injury to the applicant.

23       ➢     When it appears during the litigation that the adverse party is doing or

24

25             threatens to do an act in violation of the applicants' rights.

26  45.    Defendants in this case have refused to permit Maschmedts to use the amenities

27

28  that they are entitled to use.  As such, under these sections Maschmedts are entitled to a

Preliminary Injunction during the pendency of the case precluding Defendants from denying Maschmedts the use of the amenities.

46.     That the security for damages required under Mont. Code Ann. § 27-19-306 be waived as there will be no harm to Defendants in an Order enjoining them from the requested actions and, in addition, a waiver is in the interest of justice.

47.     That at the conclusion of the case, that the Preliminary Injunction be converted to a Permanent Injunction which lasts in perpetuity.

48.     That such injunctive relief apply to Defendants and all of their successors.

49.     That a copy of the injunction be placed of record at the offices of the Flathead County Clerk of Court

50.     To the extent that the Court deems it appropriate, that a receiver be appointed pursuant to Mont. Code Ann. § 27-20-201 at sequence to carry the Judgment into effect.

<u>**COUNT III**</u>

<u>**BREACH OF CONTRACT**</u>

51.     The Maschmedts incorporate into Count III by reference the allegations contained in paragraphs 1 through 36  as if fully set forth herein.

52.     Maschmedts entered into agreements with The Homestead at Whitefish, LLC, the predecessor in interest to Defendant GFY87, as set forth above wherein Maschmedts would purchase Property from the Homestead at Whitefish for sums certain and in exchange receive fee ownership of the real property and use of Amenities and

development of the common areas, as described in the Promotional Materials.

53.    Maschmedts have fully performed their contractual commitments.

54.    Defendant GFY87 has breached the Buy-Sell Agreement by refusing Maschmedts access to and use of the Amenities agreed upon.

55.    Maschmedts are entitled to recover their attorney's fees and costs as permitted by Montana law.

56.    As a direct result of Defendants' breach of contract, the Maschmedts have sustained financial and other direct and consequential damages in an amount which will be established at trial.

**COUNT IV**

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

57.    The Maschmedts incorporate into Count IV by reference the allegations contained in paragraphs 1-36 and 51-56 as if fully set forth herein.

58.    Defendants made certain representations with regard to providing Amenities to homeowners, including Maschmedt, under its Buy-Sell Agreement.

59.    Defendants violated the covenant of good faith and fair dealing, which is an implied covenant which exists in every contract executed in Montana.

60.    Defendants' breach of Montana's implied covenant of good faith and fair dealing is a further breach of the parties' Agreement.

61.    As a direct result of the Defendants' violation of the covenant of good faith and

1  fair dealing, the Maschmedts have sustained financial and other direct and consequential

2  damages all to their great detriment.

3
4                                    **COUNT V**

5                        **NEGLIGENT MISREPRESENTATION**

6
7  62.    The Maschmedts incorporate into Count V by reference the allegations contained

8  in paragraphs 1-36 and 51-61 as if fully set forth herein.

9
10 63.    Defendants made representations of material facts to Maschmedts that it would

11 provide, develop and/or build Amenities on the Homestead.

12 64.    Defendants owed a duty to use reasonable care when obtaining or communicating

13
14 information to the Maschmedts.

15 65.    Defendants represented to the Maschmedts that their purchase of a lot within The

16 Homestead would entitle them to utilize the Amenities forever.

17
18 66.    The representations made by Defendants, as agents of The Homestead at

19 Whitefish, LLC, were false.

20
21 67.    Defendants knew or should have known that the representations were false at the

22 time that they made such.

23
24 68.    Defendants made their representations negligently to induce Maschmedts'

25 reliance upon it.

26 69.    Maschmedts were unaware of the falsity of Defendants' representations and acted

27
28 in reliance upon the truth of the representation and they were justified in relying upon

such.

70.   As a direct, immediate and proximate consequence of Defendants' negligent misrepresentation, the Maschmedts have sustained financial and other direct and consequential damages, all to their great detriment.

## COUNT VI

## ACTUAL FRAUD

71.   The Maschmedts incorporate by reference the allegations contained in paragraphs 1-36 and 51-70 as if fully set forth herein.

72.   In marketing, promoting, and selling lots available in The Homestead, Defendants represented to Maschmedts that the Amenities and common areas would be made available to owners of property in The Homestead and that Maschmedts would have access to and use of such.

73.   The representations made to Maschmedts by Defendants were false.

74.   Defendants' representations were material to Maschmedts decision to purchase property in The Homestead.

75.   The Defendants knew of the falsity of such representations at the time they were such representations were made.

76.   Defendants' intended that Maschmedts would rely upon the false representations when entering into the Buy-Sell Agreement.

77.   Maschmedts were ignorant that the representations were false.

78.    Maschmedts were ignorant that Defendants' representations were false when they were made.

79.    Maschmedts had a right to rely upon Defendants' representations when they were made.

80.    Maschmedts relied upon Defendants' false representations when they made the decision to purchase property in The Homestead.

Such false representations were made by Defendants with malice and with the intent to deceive the Maschmedts.

81.    As a direct and proximate result of Defendants' actual malice and actual fraud, Maschmedts suffered damages and are entitled to punitive damages pursuant to § 27-1-221, M.C.A.

82.    As a direct and proximate result of Maschmedts' justifiable reliance on Defendants' false representations, Maschmedts have suffered financial and other direct and consequential damages, all to their great detriment.

## COUNT VII

## CONSTRUCTIVE FRAUD

83.    The Maschmedts incorporate by reference the allegations contained in paragraphs 1-36 and 51-82 as if fully set forth herein.

84.    The Defendants have a duty to refrain from intentionally or negligently creating a false impression by words and/or conduct.

85.   The Defendants created a false impression by words and/or conduct, through marketing and otherwise, by representing that it would provide, develop and/or build the Amenities and common areas, and that the Maschmedts would be entitled to use said Amenities and common areas.

86.   Maschmedts, relying upon this representation, purchased real properties in The Homestead.

87.   Defendants have not completed the Amenities or developed the common areas and have now restricted access to such Amenities that are presently built.

88.   Defendants have gained an advantage due to their false representations to Maschmedts.

89.   As a direct and proximate result of Maschmedts' justifiable reliance on Defendants' representations, Maschmedts have suffered financial and other direct and consequential damages, all to their great detriment.

<strong><u>COUNT VIII</u></strong>

<strong><u>UNJUST ENRICHMENT</u></strong>

90.   Maschmedts incorporate by reference the allegations contained in paragraphs 1-36 and 51-90 as if fully set forth herein.

91.   Defendants have been unjustly enriched at the expense of Maschmedts.

92.   Defendants are unjustly enriched due to their misconduct and/or by taking advantage of Maschmedts and depriving Maschmedts of the use of the Amenities and

common areas.

93.     There is no legal justification for the Defendants' enrichment and Maschmedts' impoverishment.

94.     As a direct and proximate result of Defendants' unjust enrichment, Maschmedts have suffered financial and other direct and consequential damages, all to their great detriment.

**COUNT IX**

**CONVERSION**

95.     Maschmedts incorporate by reference the allegations contained in paragraphs 1-36 and 51-94 as if fully set forth herein.

96.     Pursuant to the Buy-Sell Agreement, Maschmedts have an interest in the common areas and the Amenities currently existing on The Homestead.

97.     Maschmedts paid sums certain under the Buy-Sell Agreement for use of the Amenities and Common Areas.

98.     Defendants have exercised unauthorized control or property belonging to Maschmedts or property in which Maschmedts have an interest thereby converting Maschmedts' interest to their own benefit.

99.     As a direct and proximate result of Defendants' conversion, Maschmedts have suffered financial and other direct and consequential damages, all to their great detriment.

## COUNT X

## UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION

100.   Maschmedts incorporate into Count IX by reference the allegations set forth in paragraphs 1-36 and 51-99 as if fully set forth herein.

101.   The Maschmedts are a consumer as defined under the Consumer Protective Act adopted in the state of Montana.

102.   In soliciting, contracting with, and maintaining Maschmedts' involvement in The Homestead, Defendants have violated § 30-14-103, M.C.A.

103.   Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices by soliciting and contracting with Maschmedts as described herein.

104.   As a direct and proximate result of Defendants' unfair trade practices and deceptive acts and/or practices as described above, Maschmedts have suffered financial and other direct and consequential damages, all to their detriment.

105.   Maschmedts have suffered an ascertainable loss of money and/or real and personal property as a result of the actions of Defendants that is unlawful under Mont. Code Ann. § 30-14-103.

106.   As a result of such action, this Court has the discretion to award up to three times the actual damages sustained as well as provide any other equitable relief that the Court considers necessary or proper.

107.   Under Montana law, Maschmedts are entitled to an award of attorney's fees as

they will be the prevailing party.  Pursuant to Mont. Code Ann. § 30-14-133(3) this Court has the power to award the prevailing party reasonable attorney's fees incurred in prosecuting the claim.

WHEREFORE, the Maschmedts pray for the following relief:

1. For a Declaratory Judgement from the Court declaring Maschmedts' rights as follows:

    A. A concierge service, which would coordinate and arrange recreational activities, book restaurant reservations, and even arrange the delivery of groceries;

    B. Use of the "Homestead Lodge", which when built, would serve as the social center for The Homestead community.  The Homestead Lodge would include an outdoor dining patio, large residential style kitchen, lounge and bar areas, a fitness center and a recreational room for games and reading;

    C. Use of the "Lewis & Clark Cabins", which were two well-appointed homeowner cabins that could be used by property owners and their guests;

    D. Use of the "Hitching Post", which was located at the entrance of The Homestead and created to function as a concierge and business center for property owners and their guests;

E. Use of the "Homestead Barn/Livery Stable", which provided boarding to allow property owners to keep horses on The Homestead to explore the adjacent Flathead National Forest;

F. Use of "Little Bootjack Lodge", which was located near Little Bootjack Lake adjacent to The Homestead and could be utilized by property owners and their families for swimming, fly-fishing, canoeing, and kayaking;

G. Use of five snowmobiles and two ATV's by property owners and their guests;

H. Use of The Homestead's open space, which included miles of trails, access to the Flathead National Forest, and access to Chinook Lake.

2. For a grant of further relief from the Court by ordering the following:

A. Transferring to the Maschmedts an ownership interest in the real property upon which the cabins are located, to a pro rata share of such asset. Such ownership interest should be equal to 45/365 of such parcels. Such interest shall be held in tenancy in common;

B. To grant similar relief with regard to the lodge, barn and gatehouse;

C. To document and reaffirm all easements relating to the roads and trails to provide Maschmedts access to the amenities, as well as to the property which was defined as an amenity, and all replacement property in the future;

D. To declare that Maschmedts have the right to transfer their divided ownership interests in these assets to any person or entity which is subsequent purchaser of Maschmedts' property;

E. To instruct to provide guidance to the parties with respect to Maschmedts' obligation to pay no more than the annual fee of $3,000 for the use of the amenities, as well as the ownership of the amenities.

3. For a Preliminary and Permanent Injunction against Defendants precluding them from interfering with Maschmedts' rights as determined by the Court;

4. For actual and consequential damages in an amount to be determined at trial to compensate Maschmedts for the acts complained of in Count III (Breach of Contract);

5. For actual and consequential damages in an amount to be determined at trial to compensate Maschmedts for the acts complained of in Count IV (Breach of Implied Covenant of Good Faith and Fair Dealing);

6. For actual and consequential damages in an amount to be determined at trial to compensate Maschmedts for the acts complained of in Count V (Negligent Misrepresentation);

7. For actual and consequential damages in an amount to be determined at trial to compensate Maschmedts for the acts complained of in Count VI (Actual Fraud);

8. For actual and consequential damages in an amount to be determined at trial to compensate Maschmedts for the acts complained of in Count VII (Constructive Fraud);

9. For actual and consequential damages in an amount to be determined at trial to compensate Maschmedts for the acts complained of in Count VIII (Unjust Enrichment);

10. For actual and consequential damages in an amount to be determined at trial to compensate Maschmedts for the acts complained of in Count IX (Conversion);

11. For actual and consequential damages in an amount to be determined at trial to compensate Maschmedts for the acts complained of in Count X (Unfair Trade Practices and Consumer Protection);

12. As a result of Defendants' fraud and/or malice, for an award of punitive damages;

13. For an award of treble damages as authorized under Mont. Code Ann. § 30-14-133(1);

14. For an award of reasonable attorney's fees and costs as permitted by Montana law;

15. For such other and further relief as the Court deems just and proper.

1   DATED this 18th day of December, 2015.

2                                   DATSOPOULOS, MacDONALD & LIND, P.C.

3

4                                   By: _____

5                                       David B. Cotner, Esq.
                                        Kyle C. Ryan
6                                       *Attorneys for Plaintiffs*

7

8

9

10                                  **JURY DEMAND**

11
     Maschmedts demand jury trial on all issues so triable.
12

13   RESPECTFULLY SUBMITTED this 18th day of December, 2015.

14

15                                  DATSOPOULOS, MacDONALD & LIND, P.C.

16

17                                  By: _____

18                                      David B. Cotner, Esq.

19                                      Kyle C. Ryan

20                                      *Attorneys for Plaintiffs*

21

22

23

24

25

26

27

28